Gabriel Huey (SBN 291608)
gabriel.huey@klgates.com
Stacey Chiu (SBN 321345)
stacey.chiu@klgates.com
**K&L GATES LLP**
10100 Santa Monica Blvd, 8th Floor
Los Angeles, CA 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

Attorneys for Defendant,
 WEYERHAEUSER NR COMPANY

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN AUDELO, individually, on behalf of himself and others similarly situated<br><br>                 Plaintiff,<br><br>      v.<br><br>WEYERHAEUSER NR COMPANY and DOES 1 TO 50,<br><br>               Defendants. | Case No.<br><br>*[Originally filed in County of Shasta Superior Court Case No.: 24CV-0206069)*<br><br>**DEFENDANT WEYERHAEUSER NR COMPANY'S NOTICE OF REMOVAL TO FEDERAL COURT**<br><br>**[28 U.S.C. §§ 1331, 1332, 1367, 1441, & 1446]**<br><br>Complaint filed: September 23, 2024 |

**TO THE CLERK OF THE FEDERAL DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF CALIFORNIA:**

PLEASE TAKE NOTICE THAT pursuant to 28 U.S.C. sections 1331, 1332, 1367, 1441 and 1446 and 29 U.S.C. section 185(a), Defendant WEYERHAEUSER NR COMPANY ("Defendant"), by and through its attorneys, K&L Gates LLP, hereby removes to this Court the action entitled, *Ruben Audelo vs. Weyerhaeuser NR Company, et al.*, Case No. 24CV-0206069 (the "State Court Action") from the Superior Court of the State of California, County of Shasta. In support of this Notice of Removal of Action ("Notice"), Defendant states as follows:

## I.    STATEMENT OF JURISDICTION

1.    This Court has original jurisdiction over this Action on three (3) independent grounds. __*First*__, the Court has original jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), which vests the United States district courts with original jurisdiction of any civil action: (a) that is a class action with a putative class of more than a hundred members; (b) in which any member of a class of plaintiffs is a citizen of a State different from any defendant; and (c) in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. §1332(d). CAFA authorizes removal of such actions in accordance with United States Code, title 28, section 1446. __*Second*__, the Court has original jurisdiction under 28 U.S.C. section 1331 based upon the existence of a federal question. This Action is subject to removal pursuant to 28 U.S.C. section 1441(a) because it arises under Section 301(a) of the LMRA, 29 U.S.C. Section 185(a). __*Third,*__ this Court has supplemental jurisdiction over Plaintiff's Private Attorneys General Act of 2004 ("PAGA") claim and any remaining state-law claims under 28 U.S.C. § 1367(a) because they arise from the same common nucleus of operative fact as Plaintiff's class claims. As set forth below, this case meets all of the requirements for removal under federal question, CAFA jurisdiction, and supplemental jurisdiction and has been timely and properly removed by the filing of

1    this Notice.

2        2.    By filing this Notice, Defendant does not intend to waive, and hereby

3    reserves, any objection as to venue, the legal sufficiency of the claims alleged in the

4    Action and all other defenses.  Defendant reserves the right to supplement and amend

5    this Notice.

6    **II.    PLEADINGS, PROCESS, AND ORDERS**

7        3.    On September 23, 2024, Plaintiff RUBEN AUDELO ("Plaintiff") filed

8    a Class Action Complaint for Damages against Defendant and various Doe

9    defendants in the matter of *Ruben Audelo vs. Weyerhaeuser NR Company, et al.*, in

10   Shasta County Superior Court, Case No. 24CV-0206069 (hereinafter, the

11   "Complaint").  The Complaint is attached to the Declaration of Gabriel M. Huey

12   ("Huey Decl.") as **Exhibit "A"**.

13       4.    On January 27, 2025, Plaintiff filed a First Amended Class Action and

14   PAGA Complaint for Damages against Defendant and various Doe defendants

15   (hereinafter, the "FAC").

16       5.    Defendant was not served with the initial Complaint before Plaintiff

17   filed the FAC. (Huey Decl., ¶ 3.) On February 13, 2025, Plaintiff served the

18   Summons and FAC on Defendant through Defendant's counsel via Notice and

19   Acknowledgment of Receipt, copies of which are attached to Huey Decl. as **Exhibit**

20   **"B"**.

21       6.    Along with the Summons and FAC, Defendant has received a Civil Case

22   Cover Sheet; ADR Package; and Notice of Case Assignment.  These documents are

23   attached to Huey Decl. as **Exhibit "C"**.

24       7.    Defendant filed and served its Answer to Plaintiff's Unverified First

25   Amended Complaint on March 14, 2025.  Defendant's Answer is attached to Huey

26   Decl. as **Exhibit "D"**.

27       8.    Pursuant to 28 U.S.C. section 1446(d), the attached Exhibits A - D

28   constitute all process, pleadings and orders served on Defendant or filed or received

DEFENDANT WEYERHAEUSER NR
COMPANY'S NOTICE OF REMOVAL TO
FEDERAL COURT

3

by Defendant in this action. To Defendant's knowledge, no further process, pleadings, or orders related to this case have been filed in Shasta County Superior Court or served by any party. (Huey Decl., ¶ 7.)

9.    To Defendant's knowledge, no proceedings related hereto have been heard in Shasta County Superior Court.

## III.    TIMELINESS OF REMOVAL

10.    This Notice of Removal is timely filed as it is filed within thirty (30) days of February 13, 2024, the date of service of the Summons and FAC, and within one year from the commencement of this action. *See* 28 U.S.C. § 1446(b). Because the 30-day deadline falls on Saturday, March 15, 2025, the filing period is extended to the next court day, Monday, March 17, 2025, pursuant to Federal Rule of Civil Procedure 6(a)(1)(C).

## IV.    BASIS FOR REMOVAL

11.    This Court has original jurisdiction over this Action based upon the existence of a federal question and pursuant to CAFA, each of which are independent and sufficient. In addition, the Court has supplemental jurisdiction over Plaintiff's Private Attorneys General Act of 2004 ("PAGA") claim and any remaining state-law claims under 28 U.S.C. § 1367(a).

### A. CAFA Jurisdiction

12.    CAFA creates federal jurisdiction over lawsuits in which "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant," and involves a putative class that consists of more than 100 members. 28 U.S.C. §§ 1332(d)(2)(A) and (d)(5). Each of these three requirements is met.[1]

13.    As set forth below, this Court has jurisdiction over this case under

---

[1] A notice of removal need only provide a "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). Because § 1446 tracks Rule 8's liberal pleading

CAFA, 28 U.S.C. section 1332(d), and this case may be removed pursuant to the provisions of 28 U.S.C. section 1441(a), in that it is a civil class action wherein: (1) the proposed class contains at least 100 members; (2) Defendant is not a state, state official or other governmental entity; (3) there is diversity between at least one class member and the sole named and served Defendant; and (4) the total amount in controversy for all class members exceeds $5,000,000.

### *1) The Proposed Class Contains at Least 100 Members*

14.    28 U.S.C. section 1332(d)(5)(B) sets forth that the provisions of CAFA do not apply to any class action where "the number of members of all proposed plaintiff classes in the aggregate is less than 100." This requirement is easily met in the case at bar.

15.    Plaintiff seeks to represent a class consisting of "[a]ll current and former non-exempt employees employed by Defendants in the State of California during the four (4) years prior to the filing of this class action until certification ("Class Period")." (FAC, ¶ 1.) Plaintiff filed the initial Complaint on September 23, 2024. According to Plaintiff's definition, there are approximately 238 putative class members in this case to date. (*See* Declaration of Tatiana Cass in Support of Notice of Removal of Civil Action to Federal Court ("Cass Decl.") ¶ 4.)

### *2) Defendant Is Not a Governmental Entity*

16.    Under 28 U.S.C. section 1332(d)(5)(B), CAFA does not apply to class

---

standard, a notice of removal need only allege the grounds plausibly and need not be supported by evidentiary submissions. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014) ("In sum, as specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation."); *Roa v. TS Staffing Servs., Inc.*, No. 2:14-CV-08424-ODW, 2015 WL 300413, at *2 (C.D. Cal. Jan. 22, 2015) ("The 'short and plain statement' language from § 1446(a) applies to the entire notice of removal, and therefore would apply equally to all CAFA allegations and not just the amount-in-controversy requirement.").

actions where "primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief."

17.    Defendant is a corporation, not a state, state official or other government entity exempt from CAFA.  (Cass Decl., ¶ 2.)

### 3)  *Diversity of Citizenship Is Satisfied*

18.    CAFA's minimal diversity requirement is satisfied, *inter alia*, when "any member of a class of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. §§ 1332(d)(2)(A); 1453(b).  In a class action, only the citizenship of the named parties is considered for diversity purposes and not the citizenship of the class members.  *Snyder v. Harris*, 394 U.S. 332, 339-40 (1969).  Minimal diversity of citizenship exists here because Plaintiff and Defendant are citizens of different states.

19.    An individual's domicile supporting diversity of citizenship can be determined by, *inter alia*, physical residency and place of employment.  *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986); *Lopez v. Costco Wholesale Corporation*, 2021 WL 487368, *2 (E.D. Cal. Feb. 10, 2021).  Plaintiff's FAC states that he "is a California citizen."  (FAC, ¶ 5.)  The FAC also states that "Plaintiff was  employed in Defendants' warehouse facility."  (FAC, ¶ 5.)  Plaintiff was employed by Defendant from approximately October 12, 2022 to approximately June 28, 2023.  (Cass Decl., ¶ 3.)  Throughout his employment, Plaintiff's address on file was in the city of Redding, California.  (Cass Decl., ¶ 3.)  "[C]ourts have created a presumption in favor of an established domicile as against a newly acquired one."  *Lew*, 797 F.2d at 751.  Therefore, at the time Plaintiff commenced this action and, upon information and belief, at the time of removal, Plaintiff resided in and is a citizen of the State of California.

20.    Conversely, Defendant is not a citizen of California.  Plaintiff's FAC states that Weyerhaeuser NR Company was "incorporated in Washington . . .."  (FAC, ¶ 6.)  Defendant was a duly formed Washington corporation in good standing

1   at the time the State Court Action was filed and at the time of the filing of this Notice.

2   (Cass Decl., ¶ 2.)  Thus, Defendant is a citizen of Washington, based on its place of

3   incorporation.  28 U.S.C. § 1332(c)(1); *see also Hertz Corp. v. Friend*, 559 U.S. 77,

4   85-86 (2010).

5        21.    Defendant's corporate headquarters and principal place of business is in

6   Seattle, Washington.  (Cass Decl., ¶ 2); *see also Hertz*, 559 U.S. at 92-93 (the

7   principal place of business is "where a corporation's officers direct, control, and

8   coordinate the corporation's activities").  Thus, Defendant is also a citizen of

9   Washington, based on its principal place of business.  28 U.S.C. § 1332(c)(1).

10       22.    No other party has been named or served as of the date of this removal.

11  (Huey Decl., ¶ 7.)  The presence of Doe defendants in this case has no bearing on

12  diversity with respect to removal.  *See* 28 U.S.C. § 1441(a) ("[f]or purposes of

13  removal under this chapter, the citizenship of defendants sued under fictitious names

14  shall be disregarded").

15       23.    Accordingly, the named Plaintiff is a citizen of a State different from

16  Defendant, and diversity exists for purposes of CAFA jurisdiction.  See 28 U.S.C. §§

17  1332(d)(2)(A), 1453.

18        ### 4)  *The Amount in Controversy Exceeds $5,000,000*[2]

19       24.    Although Defendant denies all liability alleged in the FAC, if damages

20  or restitution were awarded on Plaintiff's claims, the aggregate amount as to the

21  putative class would exceed $5,000,000.[3]

22       25.    This Court has jurisdiction under CAFA, which authorizes the removal

[2] The alleged damages calculations contained herein are for purposes of removal only.  Defendant denies that Plaintiff is entitled to any relief whatsoever and expressly reserves the right to challenge Plaintiff's alleged damages in this case.

[3] In order to establish the amount in controversy requirement is met, Defendant does not concede liability nor is it required to do so. *See Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) ("Even when defendants have persuaded a court upon a CAFA removal that the amount in controversy exceeds $5 million, they are still free to challenge the actual amount of damages in subsequent

1    of class actions in which the amount in controversy for all class members in the

2    aggregate exceeds $5,000,000.  28 U.S.C. § 1332(d).

3        26.    The removal statute requires that a defendant seeking to remove a case

4    to federal court must file a notice "containing a short and plain statement of the

5    grounds for removal." 28 U.S.C. § 1446(a).  The Supreme Court, in *Dart Cherokee*

6    *Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547 (2014), recognized that "as

7    specified in §1446(a), a defendant's notice of removal need include only a plausible

8    allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.*

9    at 81.  Supporting evidence is required only if the plaintiff contests, or the court

10   questions, the allegations of the notice of removal.  *Id.* at 89.  Otherwise "the

11   defendant's amount-in-controversy allegation should be accepted" just as a plaintiff's

12   amount-in-controversy allegation is accepted when a plaintiff invokes federal court

13   jurisdiction. *Id*. at 82.

14       27.    Here, Plaintiff's allegations and claims make evident that he places

15   more than $5,000,000 in controversy.

16       28.    The FAC asserts fourteen (14) causes of action: 1) failure to pay all

17   wages including minimum and overtime wages; 2) unpaid meal period premiums; 3)

18   unpaid rest period premiums; 4) failure to provide recovery periods; 5) failure to

19   produce wage statements; 6) failure to produce personnel records; 7) failure to

20   produce signed records; 8) failure to implement heat prevent and maintain legal

21   temperature controls; 9) failure to provide accurate wage statements; 10) failure to

22

23   ───────────────

     proceedings and at trial. This is so because they are not stipulating to damages
     suffered, but only estimating the damages that are in controversy."); *Lewis v. Verizon*
24   *Communications, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("To establish the
     jurisdictional amount, Verizon need not concede liability for the entire amount,
25   which is what the district court was in essence demanding by effectively asking
     Verizon to admit that at least $5 million of the billings were "unauthorized" within
26   the meaning of the complaint."). Moreover, defenses do not affect the amount in
27   controversy. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 295-
     296 (1938); *Riggins v. Riggins*, 415 F.2d 1259, 1261-1262 (9th Cir. 1969).
28
     DEFENDANT WEYERHAEUSER NR              8
     COMPANY'S NOTICE OF REMOVAL TO
     FEDERAL COURT

pay waiting time penalties; 11) failure to reimburse necessary business expenses; 12) violation of California's quota laws; 13) unfair business practices under the Unfair Competition Law ("UCL"); and 14) enforcement of the PAGA. (Huey Decl., ¶ 4, Exh. B, FAC, ¶¶ 57-215.)

29.    In connection with his claims, Plaintiff seeks several categories of monetary relief, including, *inter alia*, (1) "compensatory damages;" (2) "economic and/or special damages;" (3) "wages;" (4) "premiums" including "split-shift premiums;" (5) "benefits;" (6) "penalties" including "waiting time penalties," "statutory penalties," and "PAGA Civil Penalties;" (7) "reporting time pay;" (8) "liquidated damages;" (9) "unreimbursed expenses;" (10) "restitution;" (11) reasonable attorneys' fees and costs; and (12) prejudgment interest and costs. (Huey Decl., ¶ 4, Exh. B, FAC, Prayer.)

30.    Alleging a UCL violation extends the statute of limitations on Plaintiff's wage and hour claims from three to four years from the filing of the Complaint, or going back to September 23, 2020. *See* Cal. Bus. & Prof. Code § 17208; *Cortez v. Purolator Air Filtration Products Co*., 23 Cal. 4th 163, 178-79 (2000) (four-year statute of limitations for restitution of wages under the UCL).

        i.    <u>Plaintiff's First Cause of Action for Failure to Pay All Wages Including Minimum and Overtime Wages Places **$2,194,215** in Controversy</u>

31.    By way of his first cause of action, Plaintiff and the putative class seek allegedly unpaid wages at minimum, regular, overtime, and double-time wage rates, as well as non-discretionary bonuses, sick pay, and vacation pay, pursuant to California Labor Code sections 204, 206, 227.3, 510, 1182.12, 1194, 1194.2, 1197, and 1198. (FAC, ¶¶ 53-73.) Plaintiff alleges that he and the putative class members incurred unpaid compensation because Defendant failed to compensate them for all hours worked at the correct legal rates, including the correct minimum wage, overtime and double overtime rate, premium wages, sick pay, and vacation pay when

1    Defendant paid bonuses.  (*Id.*)  However, Plaintiff does not state the amount of unpaid

2    regular and overtime hours he and the putative class allegedly worked each week.

3        32.    Between September 23, 2020 (4 years prior to the date Plaintiff filed his

4    Complaint) through February 24, 2025, Defendant employed approximately 238 non-

5    exempt workers in the state of California.  These 238 non-exempt employees worked

6    approximately 27,696 work weeks, and their average hourly rate of pay was

7    approximately $26.49.  (Cass Decl., ¶ 4.)

8        33.    If Plaintiff prevails on his claim for regular wages, he and the putative

9    class may be entitled to recovery of all unpaid wages.  Moreover, to determine the

10   monetary amount in controversy for Plaintiff's overtime claim, the total number of

11   unpaid hours worked by Plaintiff and the putative class that would have been

12   considered overtime or double-overtime hours is multiplied by one and one-half or

13   two times their respective regular rates of pay rate.  *See* Lab. Code § 510.

14       34.    Plaintiff does not allege a specific amount of damages for this cause of

15   action, but asserts that Defendant "failed to pay Plaintiff and Class Members all non-

16   discretionary bonuses and wages (including minimum, regular, overtime, and

17   double-time wages) for all hours worked." (FAC, ¶ 58.) Plaintiff alleges that

18   Defendant "rounded, edited, and/or input the incorrect times for Plaintiff' and Class

19   Members' start times" and "also rounded Plaintiff' and Class Members' end time"

20   resulting in "Plaintiff and Class Members perform[ing] work off-the-clock without

21   compensation."  (FAC, ¶ 50.)  Plaintiff also alleges that Plaintiff and the putative

22   class members "regularly worked in excess of eight (8) hours in a workday and/or 40

23   hours in a workweek and/or in excess of 12 hours in a workday." (FAC, ¶ 49.)  The

24   foregoing indicates more than a rare or sporadic violation rate.  Even taking an

25   extremely conservative approach of one hour of regular wages and one hour of one

26   and one-half times overtime wages per workweek, Plaintiff's regular wages claim

27   places at least **$733,667** into controversy ($26.49 x 1 hour per week x 27,696

28   workweeks) and his overtime claim places at least **$1,100,500** into controversy

1   ($26.49 x 1 hour per week 1.5 overtime rate x 27,696 workweeks).

2        35.    Further, Plaintiff seeks liquidated damages under Labor Code section

3   1194.2 for Defendant's alleged failure to pay minimum wages to putative class

4   members (FAC, ¶ 73).  If he prevails, liquidated damages may be awarded in the

5   amount equal to the unpaid minimum wages.  Starting from January 1, 2020, the

6   California state minimum wage has been at least $13 per hour.[4]  Taking the same

7   conservative approach of one hour of unpaid minimum wage per week per employee,

8   Plaintiff seeks to recover another **$360,048** from this action ($13 x 1 hour per week

9   x 27,696 workweeks).

10       36.    In sum, although Defendant vigorously denies Plaintiff's allegations,

11  including the alleged damages, if Plaintiff was to prevail on his unpaid wages claim

12  with respect to himself and the putative class, the amount in controversy for this claim

13  alone would be **$2,194,215**.

14              ii.    Plaintiff's Second, Third and Fourth Causes of Action for

15                     Failure to Provide Meal, Rest and Recovery Periods

16                     Places **$6,603,003** in Controversy

17       37.    Plaintiff's second, third and fourth causes of action allege that

18  Defendant never provided Plaintiff or the putative class members with a meal, rest,

19  or recovery period that complied with California law and never paid them meal, rest,

20  and recovery period premium payments.   Specifically, Plaintiff alleges that

21  Defendant "failed to provide Plaintiff and Class Members will all required meal

22  periods, including second meal periods."  (FAC, ¶ 79.)  He similarly alleges that

23  Defendant "failed to provide Plaintiff and Class Members with all required rest

24  periods, including second and third rest periods." (FAC, ¶ 88.)  Plaintiff also alleges

25  that due to Defendant's "uniform policies and practices, Plaintiff and Plaintiff [sic]

26  Class consistently worked without receiving a duty-free, uninterrupted recovery

27

28  [4] https://www.dir.ca.gov/dlse/faq_minimumwage.htm

period as required by the Labor Code." (FAC, ¶ 96.)  Plaintiff further alleges that Defendant failed to pay Plaintiff and the putative class members meal, rest, and recovery period premium payments when due. (FAC, ¶¶ 80, 89, 96.)

38.    Labor Code section 226.7 provides that an employer who fails to provide a 30-minute meal period for every five hours worked, a 10-minute rest break for every four hours worked or major fraction thereof, or recovery periods can be liable for up to one meal period premium, one rest break premium, and one recovery period premium per workday.  Lab. Code § 226.7.  Meal, rest, and recovery break premiums are equivalent to one hour of the employee's regular rate of compensation. *Id.*

39.    These causes of action dramatically increase the amount in controversy in this case.  Read together, the FAC alleges that Defendant never provided Plaintiff or the putative class members with a compliant meal or rest period and never paid them premium payments.  Those allegations justify maximum, 100% violation rates. Regardless, even a conservative interpretation of three (3) missed meal periods per week, three (3) missed rest breaks per week, and three (3) missed recovery periods per week  places at least $6,603,003 into controversy.  Specifically, three (3) unpaid meal period premiums per week places $2,201,001 in controversy (27,696 workweeks x 3 violations per week x $26.49 per hour), three (3) unpaid rest break premiums per week represents another $2,201,001, and three (3) unpaid recovery break premiums per week represents another $2,201,001, for a total of **$6,603,003**.

iii.    Plaintiff's Ninth Cause of Action for Failure to Provide Accurate Itemized Statements Places **$576,000** in Controversy

40.    Labor Code Section 226(a) provides that employers must, at the time of payment of wages, issue itemized wage statements which reflect nine (9) enumerated categories of information, including gross wages earned, total hours worked, deductions, net wages earned, inclusive dates of the pay period, name of the

1  employee and name and address of the legal entity that is the employer.

2       41.    Section 226(e) provides for a statutory penalty for violations of Labor
3  Code section 226(a)'s wage statement requirements of $50 or actual damages per
4  employee for the initial pay period in which a violation occurs and $100 per employee
5  for each violation in a subsequent pay period, not exceeding an aggregate amount of
6  $4,000.  Lab. Code § 226(a).  The statutory period for Labor Code section 226(e)
7  penalties is one year.  Cal. Code Civ. Proc. § 340.

8       42.    In his ninth cause of action, Plaintiff alleges that Defendant "failed to
9  comply with Labor Code section 226(a) on wage statements that were provided to
10  Plaintiff and Class Members." (FAC, ¶ 143.)  Plaintiff's wage statement claim is
11  predicated in part on his unpaid wage and meal and rest break claims.  The FAC
12  expressly incorporates allegations related to Plaintiff's unpaid wage and meal and
13  rest break claims into his ninth cause of action.  (FAC, ¶ 139 ["Plaintiff hereby re-
14  allege [sic] and incorporate [sic] by reference all paragraphs above as though fully
15  set forth herein."].)  Additionally, Plaintiff contends that the wage statements were
16  not accurate and complete because they did not include total hours worked (e.g. off-
17  the-clock work), gross wages earned (e.g. off-the-clock work and work during meal
18  and rest periods), and all applicable hourly rates (e.g. meal period premium rates).
19  (FAC, ¶ 143.)  Accordingly, Plaintiff alleges that a wage statement violation occurred
20  in each pay period worked by putative class members during the statute of limitations
21  period.

22       43.    From September 23, 2023 through February 24, 2025, Defendant
23  employed 144 non-exempt hourly workers.  (Cass Decl., ¶ 5.)  Even assuming that
24  all of the putative class members have reached the maximum penalty cap of $4,000
25  each and are not eligible to accrue any further penalties, Plaintiff places at least
26  **$576,000** into controversy (144 employees x $4,000).

27           iv.   <u>Plaintiff's Tenth Cause of Action for Failure to Pay Final</u>
28              <u>Wages Places **$514,965** in Controversy</u>

44.    Plaintiff also alleges a claim for failure to pay wages upon separation of employment under California Labor Code sections 201, 202, and 203, which has a maximum statutory penalty of 30 days of wages per affected employee.  The statute of limitations for a wage action is three years. *See* Cal. Code Civ. Proc. § 338.

45.    Because waiting time penalties can arise with any willful failure to pay wages, and Plaintiff alleges that he and the separated putative class members were not paid "all their earned wages upon termination including, but not limited to, minimum, regular, overtime, and double time compensation, and premium compensation," even minute amounts of unpaid wages could give rise to waiting time penalties under Plaintiff's allegations.  (FAC, ¶ 153.)  *See* Lab. Code § 203.

46.    Here, there are approximately 81 non-exempt, hourly employees in California whose employment with Defendant ceased within the three-year statute of limitations.  (Cass Decl., ¶ 5.)  Thus, assuming that each of these employees seek the maximum statutory penalty of 30 days of wages per employee, and using the average hourly rate of pay of $26.49 (*see* Cass Decl. ¶ 4), the amount in controversy for Plaintiff's and the putative class's waiting time penalties claim alone would be **$514,965** (81 terminated employees x 30 days x 8 hours x $26.49 per hour).

     v.    <u>Plaintiff's Eleventh Cause of Action for Failure to Reimburse Business Expenses Places **$138,480** in Controversy</u>

47.    Further, Plaintiff alleges that Defendant violated California Labor Code section 2802 by failing to "reimburse Plaintiff and Class Members for [business] expenses" that they were "required to incur . . . as a condition of and in the discharge of their employment duties . . .." including "expenses associated with the purchase of equipment." (FAC, ¶¶ 156-58.)

48.    From September 23, 2020 to February 24, 2025, the non-exempt employees worked approximately 27,696 workweeks.  (Cass Decl. ¶ 4.)  Assuming for purposes of removal that Plaintiff and the putative class members are entitled to

recover $5 per workweek for the purchase of tools and other work-related expenses, the amount in controversy for this claim would be another **$138,480** ($5 per week x 27,696 workweeks).

vi.    <u>Plaintiff's Request for Attorney's Fees Places Another</u>
<u>**$2,506,666**</u> <u>in Controversy</u>

49.    Finally, Plaintiff seeks reasonable attorneys' fees, which must also be considered in determining whether the jurisdictional limit is met.  (FAC, Prayer, section p.)  "Where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."  *Lowdermilk v. U.S. Bank National Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007) (citing *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998)).  The Ninth Circuit has "long held . . . that attorneys' fees awarded under fee-shifting statutes or contracts are included in the amount in controversy." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019); *see also Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018). Accordingly, future attorney's fees are properly included in calculating the amount in controversy for CAFA removal.  *Id.*

50.    In California, it is not uncommon for an attorneys' fee award to be twenty-five to thirty percent of the total recovery in a class action.  Even at 25%, Plaintiff places another approximately **$2,506,666** into controversy.

vii.    <u>Plaintiff Places at Least **$12,533,330** into Controversy in</u>
<u>Total</u>

51.    Although Defendant denies that Plaintiff and the putative class are entitled to any relief, accepting Plaintiff's claims as true, it is more likely than not that the amount in controversy in this case exceeds **$12,533,330:**

| | |
|---|---|
| Unpaid Regular and Overtime Wages and Liquidated Damages | $2,194,215 |

| | |
|---|---|
| Failure to Provide Meal, Rest, and Recovery Breaks | $6,603,003 |
| Failure to Provide Accurate Itemized Statements | $576,000 |
| Failure to Pay Wages at Termination | $514,965 |
| Unreimbursed Business Expenses | $138,480 |
| Attorneys' Fees | $2,506,666 |
| **Total** | **$12,533,330** |

52.     Based on the allegations in Plaintiff's FAC, the $5 million jurisdictional amount requirement of CAFA is met.

53.     Defendant provides the foregoing calculations only to demonstrate that the amount in controversy here easily exceeds the amount in controversy requirement of CAFA.  Defendant makes no admission of any liability or damages with respect to any aspect of this case, nor does it endorse or concede that the proffered methodology for such calculations passes muster.

**B.    Federal Question Jurisdiction - Section 301 of the Labor Management Relations Act**

54.     This action is a putative class action of which this Court has original jurisdiction under 28 U.S.C. section 1331 based upon the existence of a federal question, and is one which may be removed to this Court pursuant to the provisions of 28 U.S.C. section 1441(a) because it arises under Section 301(a) of the LMRA, 29 U.S.C. section 185(a).

55.     Section 301 of the LMRA provides federal jurisdiction over "suits for violation of contracts between an employer and a labor organization."  29 U.S.C. § 185(a).   Section 301 preempts "claims founded directly on rights created by collective bargaining agreements, and also claims which are substantially dependent on analysis of a collective bargaining agreement."  *Paige v. Henry J. Kaiser Co*., 826 F.2d 857, 861 (9th Cir. 1987), *cert. denied*, 486 U.S. 1054 (1988) (*citing Caterpillar Inc. v. Williams*, 482 U.S. 386, 107 S. Ct. 2425, 2431 (1987).)  "The preemptive force

of section 301 is so powerful as to displace entirely any state claim based on a collective bargaining agreement, and any state claim whose outcome depends on analysis of the terms of the agreement." *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987) (citations omitted).

56.    As the Ninth Circuit has noted, "[a]lthough the language of § 301 [of the LMRA] is limited to 'suits for violation of contracts,' it has been construed quite broadly to cover most state-law actions that require interpretation of labor agreements." *Associated Builders & Contrs. v. Local 302 IBEW*, 109 F.3d 1353, 1356-1357 (9th Cir. 1997) (*citing Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) ("When resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as preempted by federal labor-contract law.")).

57.    Thus, state law causes of action whose outcome depends on analysis of the terms of a collective bargaining agreement are preempted by Section 301 of the LMRA. *Young*, 830 F.2d at 997, 999.   If evaluation of a claim is inextricably intertwined with consideration of the terms of the labor contract, it is preempted and may be removed to federal court. *Id.*  These claims must be recharacterized as LMRA Section 301 claims and, as such, are removable to federal court. *Associated Builders & Contractors, Inc. v. Loc. 302 Int'l Bhd. of Elec. Workers*, 109 F.3d 1353, 1356 (9th Cir. 1997), *opinion amended and superseded*, No. 95-16202, 1997 WL 236296 (9th Cir. Mar. 27, 1997); *Young*, 830 F.3d at 997, 1002.

58.    "[T]he policy in favor of national uniformity in labor law is so powerful that it displaces state law with respect to claims involving the interpretation or enforcement of collective bargaining agreements." *Associated Builders*, 109 F.3d at 1356 (citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 404 (1988)). Such a policy "authoriz[es] the development of federal common-law rules of decision, in large part to assure that agreements to arbitrate grievances would be

1    enforced, regardless of the vagaries of state law and lingering hostility toward

2    extrajudicial dispute resolution." *Id*. at 1356 (citing *Livadas v. Bradshaw*, 512 U.S.

3    107, 114 S. Ct. 2068, 2077 (1994)).

4        59.    Here, the outcome of the causes of action alleged by Plaintiff depends

5    on the analysis of the terms of several collective bargaining agreements ("CBAs")

6    that members of the putative class are subject to (the "Union Members").  As such,

7    Plaintiff's claims are LMRA Section 301 claims and removable to federal court.

8        60.    The FAC's failure to acknowledge the CBAs or Union Members does

9    not preclude federal question jurisdiction.

10       61.    Generally, whether removal jurisdiction exists must be determined by

11   reference to the "well-pleaded complaint." *Merrell Dow Pharm., Inc. v. Thompson*,

12   478 U.S. 804, 808, (1986).  However, under the "artful pleading" doctrine, an

13   exception to the well-pleaded complaint rule, a plaintiff cannot defeat removal of a

14   federal claim by disguising or pleading it artfully as a state law cause of action.  The

15   "artful pleading" doctrine applies to state claims that are completely preempted by

16   federal law. *See Caterpillar*, 482 U.S. at 393 ("Once an area of state law has been

17   completely preempted, any claim purportedly based on that pre-empted state law is

18   considered, from its inception, a federal claim, and therefore arises under federal

19   law"); *see also Milne Employees Ass'n v. Sun Carriers, Inc*., 960 F.2d 1401, 1406

20   (9th Cir. 1991) (plaintiff "cannot avoid removal by 'artfully pleading' only state law

21   claims that are actually preempted by federal statutes").  If the claim arises under

22   federal law, the federal court will re-characterize it and uphold removal. *Federated*

23   *Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398 n. 2 (1981).

24       62.    Accordingly, it does not matter that Plaintiff has pled his claims to omit

25   any reference to any CBA.  Preemption is determined by the substance of the claim

26   and not its characterization in the FAC.  "Mere omission of reference to Section 301

27   in the complaint does not preclude federal subject matter jurisdiction." *Fristoe v.*

28

DEFENDANT WEYERHAEUSER NR                    18
COMPANY'S NOTICE OF REMOVAL TO
FEDERAL COURT

*Reynolds Afetals Co.,* 615 F.2d 1209, 1212 (9th Cir. 1990).

63.    The Ninth Circuit has articulated a two-part test to determine whether a cause of action is preempted by the LMRA. *Burnside v. Kiewit Pac. Corp*., 491 F.3d 1053, 1059 (9th Cir. 2007).  First, the court must determine if the asserted cause of action involves a right conferred upon an employee by virtue of state law, independent of a CBA.  *Id*. at 1060.  If the right exists solely because of the CBA, then the claim is preempted, and analysis ends.  *Id*.  Second, if the right exists independently of the CBA, the court must then consider whether resolving the dispute is nevertheless "substantially dependent on [the] analysis of a collective-bargaining agreement." *Id*. If such dependence exists, then the claim is preempted by section 301; if not, then the claim is left to state courts to handle in accordance with state law. *Id.*

64.    When determining whether resolution of a state claim requires interpretation of a collective bargaining agreement, the court must "examin[e] the terms of the agreement, the elements of the [claim] involved . . . and the facts which the defendant may assert in defense." *Moreau v. San Diego Transit Corp*., 210 Cal. App. 3d 614, 624 (1989), relying in part on *Hanks v. General Motors Corp*., 859 F.2d 67, 70 (8th Cir. 1988) (Defendant's affirmative defenses must be considered in determining whether the collective bargaining agreement must be interpreted in order to resolve the state law claim).

65.    Here, Plaintiff alleges that he brings his claims on behalf of "himself and all others similarly situated . . .." (FAC, ¶ 22.) The proposed class is defined as:

> All current and former non-exempt employees employed by Defendants in the State of California within four years prior to the filing of this action to the date of class certification.

1    (FAC, ¶ 30.)

2        ***1)   The Court Must Analyze Defendant's CBAs to Determine***
3            ***Whether Union Members Are Exempt From Statutory Overtime***
4            ***Provisions Under Labor Code Section 514***

5        66.    Labor Code section 514 exempts California employees from
6    California's overtime pay requirements set forth in Labor Code section 510.  To fall
7    under the exemption, the following requirements must be met: (1) the employee must
8    be covered by a "valid" CBA; (2) the CBA must "expressly provide[] for wages,
9    hours of work, and working conditions of the employees"; (3) the CBA must provide
10   premium wage rates for all overtime hours worked; and (4) the CBA must provide a
11   regular hourly rate of pay of not less than 30 percent more than the state minimum
12   wage.  Lab. Code § 514.  When an analysis of the CBA is required, Section 301 of
13   the LMRA preempts state law overtime claims.  *Firestone v. Southern Calif. Gas*
14   *Co*., 219 F.3d 1063, 1066 (9th Cir. 2000); *Hall v. Live Nation Worldwide, Inc.*, 145
15   F.Supp.3d 1187, 1203-04 (C.D. Cal. 2015); *Coria v. Recology, Inc.*, 63 F.Supp.3d
16   1093, 1099-1100 ("this is a case that does fall under the exemption provided by
17   California Labor Code Section 514, and plaintiff's overtime claim also cannot be said
18   to be based on a state law right to overtime under California Labor Code Section
19   510" and is therefore preempted under Section 301).

20       67.    At all times relevant to the FAC, Defendant was a party to at least six
21   (6) separate CBAs that covered California employees.  (Cass Decl., ¶¶ 6-12, Exs. A-
22   F.)  The CBAs apply to hourly employees who provide services at Defendant's
23   Fontana, Long Beach and Santa Clarita facilities.  (*Id*.)  Each CBA contains specific
24   provisions related to Union Members' wages, some of which can vary depending on
25   the employees' duration of employment.  (*Id*.)  The CBAs also contain compensation
26   provisions related shift differentials, minimum pay, call provisions, overtime work,
27   weekend work and holiday pay.  (*Id*.)  Many of the employees Plaintiff seeks to
28   represent as putative class members were subject to one of the six (6) separate CBAs

1  in effect. (*Id.*)

2      68.    Plaintiff's overtime claims asserted on behalf of the Union Members are
3  dependent on the Court's analysis of each of the CBA, and each CBA's respective
4  provisions related to wages, hours of work, working conditions, work schedules,
5  overtime, shift differentials and rates of pay. For example, the CBA covering the
6  Fontana facility between February 1, 2017 and January 31, 2021 (the "Fontana 2017
7  CBA") provides for a shift differential of $.75/hr for employees who work a majority
8  of their hours between 2:00 p.m. and 4:59 a.m. (Cass Decl., ¶ 7, Ex. A at Art. IV,
9  Sec. 1.) The Fontana 2017 CBA further provides for double straight-time rate to be
10  paid for all work performed on Sundays, regardless of the number of hours worked
11  during the workweek, one and one-half time the regular rate for all hours worked on
12  a recognized holiday, or double straight time for certain holidays, ***in addition to***
13  holiday pay. (*Id*. at Art. VI, Sec. 3, 5 and 6.) The Fontana 2017 CBA also provides
14  for "time and one-half" for the sixth and seventh day of a Fontana employee's work
15  week, and double-time for any work on the seventh consecutive day of the
16  employee's work week. (*Id.* at Art. VI, Sec. 2.) Article V of the Fontana 2017 CBA
17  provides for reporting pay, and minimum pay for an employee who reports to work
18  but leaves early. (*Id*. at Art. V.) The amount an employee is paid depends on the
19  reason the work day is cut short. (*Id*.) This is just one CBA, which requires in-depth
20  and complex analysis to determine if the statutory overtime provisions apply, if at
21  all. Each of the remaining five CBAs require the same, additional and different
22  analysis. For example, the four CBAs that are applicable to the Long Beach and
23  Santa Clarita facilities permit variable and/or alternative workweek schedules. (*Id*.
24  at ¶¶ 10-13, Exs. C-F.)

25      69.    Defendant asserts all requirements of the exemption to the application
26  of overtime wage requirements provided by Labor Code Section 514 are met for
27  Union Members who were and/or are covered by one of the six CBAs.

28      70.    Each of the CBAs are valid, and expressly provide for wages, hours of

work, and working conditions of the Union Members.  (Cass Decl., ¶¶ 6-12, Exs. A-F.)

71.    Each of the CBAs provide for a premium wage rate for all overtime hours worked.  (*Id.*)

72.    In addition, each CBA provides for an effective hourly rate of pay that is not less than 30 percent more than the state minimum wage.  (*Id.*)  New hires may be subject to different hourly rates up until they complete their first year of employment with Defendant, after which point, they would earn the effective hourly rate.  (*Id.*)

73.    Accordingly, California's statutory overtime requirements are inapplicable and instead modified and controlled by the applicable CBAs.  *Buck v. Cemex*, 2013 WL 4648579, at *7 (E.D. Cal. Aug. 29, 2013).

74.    By predicating his class action on overtime claims under California law, Plaintiff implicitly disputes that the terms of the CBAs meet the requirements of the Section 514 overtime exemption, thereby necessitating the Court's analysis and interpretation of the applicable CBAs to determine whether each meets the exemption requirements set forth in Section 514. Thus, Plaintiff's claim is substantially dependent on the Court's analysis of the six CBAs applicable to many putative class members. As an initial matter, the Court must determine that each of the CBAs at issue is "valid." This will require a thorough examination of the terms of each CBA. Next, the Court must determine whether the CBAs contain express provisions for the "wages, hours of work, and working conditions of the employees." Lab. Code § 514. Several courts have held that claims are preempted by the LMRA if they require an analysis of the CBA to determine the applicability of a Labor Code exemption. *See e.g. Raphael v. Tesoro Ref. & Mktg. Co. LLC*, 2015 WL 3970293, at *5 (C.D. Cal. June 30, 2015) (finding LMRA preemption because "to resolve [plaintiff's] claims it will be necessary to interpret the relevant CBAs to determine whether the disputed provision satisfies the requirements of a meal period exemption); *Mireles v. Paragon*

*Systems Inc.,* 2013 WL 3450090, at *3 (S.D. Cal. July 9, 2013) (where plaintiffs contended that a CBA was inadequate under the terms of Labor Code section 512(e) because it did not provide for overtime wages, the Court stated that the plaintiffs' reasoning thus "rests on an interpretation of the CBAs"); *Buck,* 2013 WL 4648579, at *6.

75.    Because interpretation and analysis of the CBAs are imperative to determine whether the Union Members are (or are not) exempted by Labor Code section 514 from the general overtime provisions of California statutory law, these claims are preempted by the LMRA and the Court has federal question jurisdiction.

### 2) Plaintiff's Claims Are Substantially Dependent on the Court's Analysis and Interpretation of the Six CBAs

76.    Even if the Union Members were not exempt from the overtime requirements of the Labor Code, which Defendant disputes, there is no question that the resolution of Plaintiff's claims would remain substantially dependent upon and require an interpretation of various provisions of the six CBAs. *Caterpillar,* 482 U.S. at 394 (holding section 301 preempts state law claims that are "substantially dependent" on an analysis of a collective bargaining agreement); *Firestone*, 219 F.3d at 1066 (finding LMRA preemption where interpretation of the collective bargaining agreement was necessary to determine the plaintiffs' regular rate for overtime claims). To resolve Plaintiff's claims, the Court will still need to determine the regular rate of pay to calculate the regular rate for purposes of overtime. Calculating when overtime would apply and at what rate will require more than merely referring to the collective bargaining agreement; it will require a complex analysis of the terms of the various CBAs.

77.    For example, in the CBA covering warehouse person employees of the Santa Clarita facility between 2018 and 2022 (the "SC 2018 CBA"), alone, there are numerous provisions that will alter a Union Member's regular rate of pay and therefore require analysis and interpretation by the Court. (Cass Decl., ¶ 11, Ex. E.)

Some examples of terms and provisions from the CBA that are substantially dependent upon an analysis and interpretation by the Court include, but are not limited to, the following:

    a.  In Exhibit "A", the SC 2018 CBA provides for a different hourly rate of pay for new hires, who may be deemed to be "experienced" or "inexperienced" employees.  If experienced, after six months, the employees' rate "will be increased by one-half (1/2) the difference of the new hire rate and warehouse person."  However, if the new hire is inexperienced, their rate only increased by "one-third (1/3) the difference between the new hire rate and warehouse person," after six months, and then is increased against six months "thereafter . . . until the employee reaches the top of the 'Warehouse "person' classification."  Employees who are assed as lead are also provided with a $1.50 per hour "differential above the rate of 'Warehouse Person.'"  These terms of the SC 2018 CBA must be analyzed and interpreted by the Court to determine the definition of "experienced" and "inexperienced" to determine whether the employee should receive a one-half increase or one-third increase after the initial six-months of employment.

    b.  Section 3, subsection (a) further provides for regular or variable work time. It provides that "Five (5) Days shall constitute a regular work week, Monday thru Friday," and may start any time between 4:00 a.m. and 10:00 a.m., which may be changed so long as notice is given by Thursday of the prior week to the affected employee.  Thus, the Court must analyze and interpret this provision as applied to each work week of each affected employee to determine the appropriate work week, so as to correctly determine the number of overtime hours worked, if any.

    c.  Section 3, subsection (b) states that any work done on the seventh day of work will be paid "at the rate of double time, except that such work as may

1   be necessary in order to facilitate the emergency arrival of material may be

2   done on Sundays at time and one-half the regular hourly rate of pay for the

3   first eight (8) hours of such work performed." This provision requires

4   complex analysis and interpretation by the Court to determine (amongst

5   other things): (1) whether any given day is properly found to be the seventh

6   day of work, depending on the variable work week applied pursuant to

7   Section 3(a); (2) whether any work was "necessary"; (3) whether any work

8   done was for the purpose of facilitating "the emergency arrival of material;"

9   and (4) whether the phrase "regular hourly rate of pay" is synonymous with

10  "regular rate."

11  d. Section 3, subsection (c) provides for different rates of pay for additional

12  shifts.  For example, it states "[t]he Employer may schedule a second shift

13  (a shift starting at 3:00PM or after), or a third shift (a shift starting at

14  11:00PM or after) upon 7 days advance notice." The Court must determine

15  how this provision is reconciled with Section 3(a), which permits the

16  Employer to change the regular work day with appropriate notice.

17  e. The Court must also analyze and interpret the meaning of Section 3(c),

18  which provides that when any additional shift "fails to work a full calendar

19  week, weather permitting, all such time as is worked shall be at the overtime

20  rate." The meaning of this phrase and its applicability is necessary for

21  determining when any overtime rate may apply.

22  f. Section 3(c) further states any extra shifts are completed "without overtime

23  penalty" if they are "started on a day before a holiday or on Friday." Again,

24  the Court must determine whether the timing contemplated in this Section

25  applies, dependent on any notice given for an alternative workweek

26  schedule, pursuant to Section 3(a).

27  g. Section 3, subsection (d) further permits Defendant to implement an

28  alternative workweek for any group of employees, with modifications as

provided by the SC 2018 CBA. The Court will need to interpret whether this provision applies to any putative class member, and its effect on any alleged overtime worked.

h.  Section 3, subsection (d)(3) also provides for 10 hours' of pay to be paid for an employee whose work day falls on a holiday. The Court would need to interpret this provision to determine, among other things: (1) whether the employee is appropriate subject to an alternative work schedule as provided by the CBA; (2) whether the holiday pay is in addition to pay for hours worked; and, (3) if the pay is not in addition to pay for hours worked, whether the employee is restricted to work only the 10 hours, or how pay would be handled for any hours worked in excess of 10.

(*Id.*)

78.    These and other questions are presented by each of the six applicable CBAs impacting Union Members.  A rigorous interpretation and analysis of each CBA is necessary to evaluate Plaintiff's overtime, and, accordingly, Plaintiff's derivative wage statement and final wages claims.

79.    Accordingly, the Union Members' claims are substantially dependent upon an analysis and interpretation of these provisions to determine whether Defendant improperly failed to pay Union Member's overtime pay and the value of any alleged damages.  As such, these claims are preempted by Section 301. *Raphael*, 2015 WL 3970293, at *7; *Coria*, 63 F. Supp. 3d at 1098-1100. *See also, Paige*, 826 F.2d at 861; *Levy v. Skywalker Sound*, 108 Cal. App. 4th 753, 768-769 (2003) (claim for unpaid wages under California Labor Code section 204 was preempted by Section 301); *Buck*, 2013 WL 4648579 at *7 (denying motion to remand on the basis of preemption under section 301 when Labor Code sections 512(e) and 514 were involved).

C. <u>Supplemental Jurisdiction</u>

80.    Under 28 U.S.C. § 1367(a), "district courts shall have supplemental

jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." State-law claims are part of the "same case" as federal claims when they "derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding." *Kuba v. 1-A Agricultural Ass'n*, 387 F.3d 850, 855 (citation omitted); see also *Coria v. Recology, Inc.*, 63 F. Supp. 3d 1093, 1098 (N.D. Cal. 2014) (taking supplemental jurisdiction of derivative claims that were "inextricably intertwined" with preempted claims).

81. Here, Plaintiff's PAGA and other remaining state-law claims arise from the same arise from the same alleged employment policies and practices by Defendant, including failure to pay wages and provide required compensation. These claims share a common nucleus of operative fact with Plaintiff's class claims under CAFA and federal law claims under the LMRA. Because they are factually and legally intertwined, they properly fall within the Court's supplemental jurisdiction. See *Thompson v. Target Corp.,* No. EDCV 16-00839 JGB (MRWx), 2016 U.S. Dist. LEXIS 101363, at *12 (C.D. Cal. Aug. 2, 2016) (concluding that "given that the Court finds it has original jurisdiction over Plaintiff's class claims under CAFA, the Court may exercise supplemental jurisdiction over Plaintiff's PAGA claims."); *Blackwell v. Commercial Refrigeration Specialists, Inc.*, 2021 WL 2634501, at *1, 4-6 (E.D. Cal. June 25, 2021) (taking supplemental jurisdiction over the remaining PAGA action based on rest breaks, minimum wages, wage statements, and expense reimbursement where the overtime and meal period portion of the PAGA action was preempted under Section 301*); Jimenez v. Young's Market Company, LLC,* 2021 WL 5999082, at *1, 7, 13 (N.D. Cal. Dec. 20, 2021 (taking supplemental jurisdiction of portion of PAGA claims involving minimum wages and rest periods where the part of the PAGA claims regarding overtime and meal periods were preempted under Section 301); *Rodriguez v. Sukut Construction, Inc.,* 2022 WL 17547526, at *1, 8

1  (E.D. Cal. Dec. 9, 2022) (same); *Nettles v. Paramedics Logistics Operating*

2  *Company, LLC,* 2022 WL 137631, at *1 (N.D. Cal. Jan. 14, 2022) (same).

3      82.    Moreover, none of the four categories under 28 U.S.C. § 1367(c)

4  warrant discretionary remand of the PAGA claim.  The PAGA claim does not raise

5  "a novel or complex issue of State law" or "substantially predominate[] over the

6  claim or claims over which the district court has original jurisdiction." 28 U.S.C. §

7  1367(c)(1), (2). Nor has this Court or the State Court dismissed all causes of action

8  over which this Court has original jurisdiction under CAFA. 28 U.S.C. § 1367(c)(3).

9  Further, there are no other "exceptional circumstances ... for declining jurisdiction."

10  28 U.S.C. § 1367(c)(4).

11      83.    Because Plaintiff's PAGA claim is entirely derivative of the class claims

12  that establish CAFA jurisdiction, this Court should exercise supplemental

13  jurisdiction over the PAGA claim and retain the case in federal court.

14  **V.    VENUE**

15      84.    Venue lies in the United States District Court for the Eastern District of

16  California pursuant to 28 U.S.C. §§ 84(c), 1441(a), and 1446(a).  Plaintiff originally

17  brought this action in the Superior Court of the State of California, County of Shasta.

18  Based on the location of the California state superior court where Plaintiff filed his

19  Complaint, the appropriate assignment of this action is to the Sacramento Division.

20  **VI.    NOTICE OF STATE COURT AND PLAINTIFF**

21      85.    Contemporaneously with the filing of this Notice of Removal in the

22  United States District Court for the Central District of California, as required by 28

23  U.S.C. § 1446(d), written notice of this Notice of Removal will be filed with the

24  Clerk of the Superior Court of the State of California for the County of Shasta.

25      86.    In addition, such filing will be given by the undersigned to counsel for

26  Plaintiff.

27      87.    WHEREFORE, Defendant prays that the Court remove this civil action

28  from the Superior Court of the State of California, County of Shasta, to the United

1    States District Court for the Eastern District of California.

2    Dated:        March 17, 2025

3

4

5                                                    GABRIEL M. HUEY
6                                                    STACEY CHIU
7                                                    K&L GATES LLP
                                                     Attorneys for Defendant,
8                                                    WEYERHAEUSER NR COMPANY

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28